IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MANUEL L. K., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 23-CV-391-JFJ |
| | ) |
| MARTIN J. O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Manuel L. K. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability benefits under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.**     **General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps

2

that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

II.     **Procedural History and the ALJ's Decision**

On August 25, 2020, Plaintiff, then a 33-year-old male, protectively applied for a period of disability and disability insurance benefits under Title II, and supplemental security income benefits under Title XVI. R. 409-418, 458-459. Plaintiff alleges that he has been unable to work since February 2, 2020, due to high blood pressure, heart issues, stent in heart, and high cholesterol. R. 410, 458, 493. Plaintiff's claims for benefits were denied initially and on reconsideration. R. 219-225, 228-233. Plaintiff then requested a hearing before an ALJ, and ALJ Deborah Giesen conducted a hearing on April 5, 2022. R. 45-81, 239-240. The ALJ issued a decision on May 2, 2022, denying benefits and finding Plaintiff not disabled. R. 190-201. The Appeals Council, however, remanded the case back to the ALJ after finding error in the ALJ's symptom evaluation.

R. 209-210. On remand, the ALJ held a second hearing on February 13, 2023. R. 82-112. On February 24, 2023, the ALJ issued another decision denying benefits and finding Plaintiff not disabled because he could perform past relevant work. R. 17-30. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

In the second decision, the ALJ found Plaintiff's date last insured was June 30, 2025. R. 19. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 2, 2020. *Id.* At step two, the ALJ found that Plaintiff's coronary artery disease, status post myocardial infarction,[2] and status post percutaneous coronary intervention with stent placement were severe impairments,[3] but that his obesity, hearing loss, heel spur, and adjustment disorder were non-severe. R. 20-21. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that were of such severity to result in listing-level impairments. R. 23-24. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the two areas of (1) understanding, remembering, or applying information and (2) concentrating, persisting, or maintaining pace; and no limitations in the two areas of (1) interacting with others and (2) adapting or managing oneself. R. 21-22.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b),

---

[2] A myocardial infarction is more commonly known as a heart attack. *Heart Attack*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/heart-attack/symptoms-causes/syc-20373106 (last visited Aug. 26, 2023).

[3] A percutaneous coronary intervention ("PCI"), also called a coronary angioplasty, is a procedure used to open narrow or clogged arteries. During a PCI, a small balloon attached to a catheter is inserted into the artery, the balloon is inflated to widen the artery, and a stent is placed in the artery to keep it open. *Coronary Angioplasty and Stents*, Mayo Clinic, https://www.mayoclinic.org/tests-procedures/coronary-angioplasty/about/pac-20384761 (last visited Aug. 26, 2023).

4

416.967(b) with the following limitations: "no climbing ladders, ropes, or scaffolds; no work around unprotected heights or unprotected dangerous moving machinery; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no concentrated exposure to dusts, fumes, gases, or poor ventilation; and no concentrated exposure to extremes of cold or humidity." R. 24.

Based on the testimony of a vocational expert ("VE"), the ALJ found at step four that Plaintiff could return to his past relevant work as an animal caretaker and parking enforcement officer. R. 28-29. Accordingly, the ALJ concluded Plaintiff was not disabled. R. 30.

### III.    Issues

Plaintiff raises five points of error in his challenge to the denial of benefits: (1) the ALJ failed to develop the record regarding Plaintiff's supraventricular tachycardia ("SVT");[4] (2) the ALJ failed to properly assess Plaintiff's physical RFC pursuant to Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); (3) the ALJ's consistency analysis was improper; (4) the ALJ improperly evaluated the opinion of state agency psychological reviewer Dr. Laura Eckert; and (5) the ALJ failed to consider the effects of Plaintiff non-severe mental impairment in formulating the mental RFC. ECF No. 13.

### IV.    Analysis

#### A.    The ALJ Adequately Developed the Record

Plaintiff contends the ALJ failed to develop the record regarding his SVT. More specifically, Plaintiff argues there is no medical evidence that "establishe[s] specific limitations for the ALJ to determine" the functionally limiting effects of his SVT. ECF No. 13 at 6.

---

[4] SVT is a type of irregularly fast heartbeat and is commonly known as an arrhythmia. *Supraventricular Tachycardia*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/supraventricular-tachycardia/symptoms-causes/syc-20355243 (last visited Aug, 27, 2024).

5

Although the burden to prove disability is on the claimant, a social security disability proceeding is non-adversarial, and the ALJ has a "basic obligation . . . to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)). "This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented." *Id.* "The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts." *Id.* "The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997). The standard, instead, "is one of reasonable good judgment." *Id.* The ALJ is not required to further develop the record if she can make a disability determination based on the evidence in the administrative record. *Cowan*, 552 F.3d at 1187.

The Court finds the ALJ adequately developed the record and rejects Plaintiff's argument that the ALJ lacked sufficient evidence on which to base an RFC. The ALJ did not find Plaintiff's SVT to be a medically determinable impairment at step two, but she fully considered the functional impairments resulting from it. R. 24-27.[5] The ALJ discussed exams from January 2021, November 2021, and January 2022 that showed Plaintiff had a regular heart rate and rhythm with no murmur. R. 25-26 (citing R. 635, 700, 751). The ALJ also discussed Plaintiff's sole episode of cardiac arrhythmia. R. 26 (citing 696-702). In December 2021, Plaintiff reported to the emergency room with a heart rate of 203. R. 700. He was given a 12mg dose of adenosine, his

---

[5] Because the ALJ thoroughly evaluated all evidence related to Plaintiff's SVT in her discussion of the RFC, any error that occurred at step two is harmless. *See Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) ("[A] failure to find an impairment medically determinable is essentially a step-four error," that is "obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC.") (citing *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013)).

heart rate decreased to normal levels within 45 minutes, and he was released the same day. R. 696-702. Plaintiff points to no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation. The ALJ considered Plaintiff's SVT, and the ALJ assessed RFC limitations to account for this condition. *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination). The Court rejects Plaintiff's contention that the ALJ was obligated to obtain additional evidence to determine whether Plaintiff could perform full-time work despite his symptoms.

In addition, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (citation and internal quotation marks omitted). *See also Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to extort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation."). Here, Plaintiff was represented by counsel at both administrative hearings and did not challenge the sufficiency of the record or request a consultative examination related to his SVT. *See* R. 67-68, R. 86 (Plaintiff's counsel stating record was complete). *See Hawkins*, 113 F.3d at 1168 ("In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.").

    **B.**    **Plaintiff's Physical RFC Was Supported by Substantial Evidence**

Plaintiff asserts the ALJ's RFC determination for a reduced range of light work was not supported by substantial evidence and fails to comply with SSR 96-8p, 1996 WL 374184 (July 2,

1996).  ECF No. 13 at 6-9.  A claimant's RFC is his "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite his medical impairments and symptoms.  SSR 96-8p, at *2.  In assessing the RFC, the ALJ must "include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations.  *Id.* at *7.  In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id*.  Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved."  *Id.*  If the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted."  *Id.*

The ALJ's RFC assessment meets this standard.  In finding Plaintiff could perform a reduced range of light work, the ALJ discussed Plaintiff's administrative hearing testimony, the findings of his treating and reviewing physicians, and the imaging of record.  R. 24-27.  The ALJ noted Plaintiff's reported fatigue, irregular heartbeat, fear of another heart attack, and problems with sleeping, lifting, squatting, bending, standing, and kneeling, but also reported being able to shower, clean, exercise, dress, groom, feed himself, drive, shop, and take care of his pet without any problems.  R. 26 (citing R. 515-523).  The ALJ further noted: (1) a January 2021 exam that showed regular heart rate and rhythm with no murmur, no cyanosis or clubbing or edema, and no obvious muscle weakness, instability, or abnormal gait (R. 25 (citing R. 635)); (2) a February 2021 exam that showed Plaintiff's coronary artery disease was stable with medication (*id.* (citing R. 644)); (3) a July 2021 stress echocardiogram that showed "normal" results with "good" exercise tolerance (*id.* (citing R. 688-689)); and (4) November 2021 and January 2022 exams that showed regular heart rate and rhythm with no murmur (R. 25-26 (citing R. 700, 751)).  The ALJ discussed Plaintiff's July 2020 heart attack and subsequent PCI procedure, but explained that the record

showed no evidence of cardiac rehabilitation or follow-up.  R. 25 (citing R. 583-584, 600, 602).  The ALJ also discussed Plaintiff's December 2021 emergency room visit for arrhythmia, but explained that Plaintiff's heart rate returned to normal levels within 45 minutes of being given medication.  R. 26 (citing R. 696-702).

Plaintiff also appears to argue the ALJ needed a medical opinion to support the RFC.  ECF No. 13 at 6 ("[N]o medical source statement established specific limitations for the ALJ to determine the Claimant's RFC to perform work-related physical activities . . . .").  Plaintiff's argument is unpersuasive.  First, the ALJ's RFC need not correspond directly to a specific medical opinion.  *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (finding "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question," and rejecting argument that there must be "specific, affirmative medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category").  Second, as explained above, the ALJ reviewed Plaintiff's treatment record and cited evidence in support of the physical RFC.  Third, the ALJ did review the prior administrative medical findings of the state agency medical reviewers, but found their opinions unpersuasive and limited Plaintiff to a *more* restrictive physical RFC−that is, the ALJ limited Plaintiff to light work with postural limitations while the reviewers limited Plaintiff to medium work.  R. 27 (citing R. 115-142, 143-184). Because the ALJ rejected the reviewers' findings in Plaintiff's favor, any purported error in the ALJ's analysis of the findings is harmless.  *See Mounts v. Astrue*, 479 F. App'x 860, 868 n.2 (10th Cir. 2012) (declining to address argument that ALJ erred by giving Plaintiff additional RFC limitation that "work[ed] to her benefit"); *Beverly A. T. v. O'Malley*, No. 23-cv-00050-SH, 2024 WL 1308039, at *4-5 (N.D. Okla.

Mar. 27, 2024) (declining to address argument that ALJ erred in evaluating prior findings, where ALJ "rejected the prior findings in [plaintiff's] favor").[6]

The Court finds the ALJ considered the evidence related to Plaintiff's physical RFC and adequately explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Plaintiff fails to identify any evidence undermining the ALJ's conclusion that he could perform a reduced range of light work. Because Plaintiff points to no evidence the ALJ overlooked, his arguments amount to a request that the Court re-weigh evidence, which it cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("We review only the sufficiency of evidence, not its weight. . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views[.]") (cleaned up).

    **C.**    **The ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper. ECF No. 13 at 10-12. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 16, 2016). If they are consistent, the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, the ALJ "will determine that the individual's symptoms are less likely to reduce his

---

[6] One reviewer did find Plaintiff should "avoid concentrated exposure" to noise. R. 155, 176. However, the ALJ found this opinion unpersuasive and did not include it in the decisional RFC, because Plaintiff only had mild hearing loss and the limitation was not stated in vocationally relevant terms. R. 20, 24, 27. Plaintiff does not argue the ALJ should have included a noise limitation in the RFC.

or her capacities to perform work-related activities." *Id*. Factors the ALJ should consider in determining whether a claimant's pain is disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p, at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(C)(3), 416.929(c)(3).[7]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan*, 552 F.3d at 1190 (quotations omitted). If the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, then the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation and internal quotation marks omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

1. **The ALJ's Decision**

The ALJ specifically acknowledged Plaintiff's hearing testimony that he has not been the same since his heart attack; worries about straining his heart; struggles with getting up and moving; believes his heartbeat does not sound right; has constant fatigue; struggles lifting heavy objects; has headaches; has problems remembering and concentrating; and feels pain and a burning

---

[7] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p, at *1 (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. Appx. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

sensation in his chest.  R. 24.  The ALJ then found Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms but his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record.  R. 25 ("The evidence shows that the claimant's physical impairments result in some degree of functional limitation, but not to the extent alleged.").  As supports, the ALJ summarized and discussed the objective medical evidence cited in Parts IV.A-B.  *See* R. 24-27.

### 2. Plaintiff's Argument

Plaintiff argues the ALJ's consistency analysis was erroneous, because the ALJ failed to properly (1) analyze his SVT, and (2) evaluate his testimony that he still takes cardiac medication.  ECF No. 13 at 11-12.  The Court rejects these arguments and finds that the ALJ's consistency analysis was proper.

#### a. SVT

Plaintiff repackages his previous arguments and alleges the ALJ's consistency analysis was insufficient, because the ALJ failed to properly analyze Plaintiff's SVT.  ECF No. 13 at 10-12.  The ALJ did not use the exact phrase "SVT" or supraventricular tachycardia in her decision, but the ALJ considered Plaintiff's irregular heartbeat (or lack thereof) throughout her decision and assessed RFC limitations to account for this condition.  *See* R. 25-26 (discussing examinations showing Plaintiff had a regular heartbeat and rhythm with no murmur) (citing R. 635, 700, 751); R. 26 (discussing Plaintiff's sole episode of cardiac arrhythmia) (citing 696-702).  The Court rejects Plaintiff's contention that the ALJ failed to properly analyze whether Plaintiff could perform full-time work despite his SVT and identifies no reversible error regarding the ALJ's discussion of Plaintiff's irregular heartbeat.

### b.      Cardiac Medication

Plaintiff testified at the second hearing that he still takes cardiac medication. R. 101-102. Plaintiff contends the ALJ erred in failing to explain why she found this testimony not credible. ECF No. 13 at 11. The Court finds no error. In discussing the RFC, the ALJ discussed this testimony, but found it was not supported by the record. The ALJ explained that the record showed Plaintiff was last prescribed cardiac-related medication for a one-year period in December 2021, and that, if Plaintiff took his medication as prescribed, he would have run out by the time of the second hearing in February 2023. R. 26. The ALJ explained that Plaintiff was unable to explain how he was still taking these medications if he was taking them as prescribed. *Id.* Further, during the second hearing, the ALJ specifically noted that she did not have any medical records supporting this testimony. *See* R. 102 ("I don't have any documentation that you've seen a doctor, whether a primary care doctor or a cardiologist since December of 2021 . . . and you're saying that . . . you're still taking [medication].").

In making this argument, Plaintiff briefly argues the ALJ had a duty to develop the record based on this testimony, but Plaintiff's counsel stated the record was complete. *See* R. 86. Plaintiff cannot rest on the record at the hearing but claim otherwise after an unfavorable decision. *See Maes*, 522 F.3d at 1097 (explaining that the ALJ's duty to develop the record does not allow a claimant, through her counsel, "to rest on the record—indeed, to extort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation").

### D.      The ALJ Properly Evaluated Dr. Eckert's Prior Administrative Medical Findings

Plaintiff argues the ALJ failed to properly evaluate the prior administrative medical findings from state agency psychological reviewer Dr. Laura Eckert. ECF No. 13 at 13. For claims filed after March 27, 2017, such as Plaintiff's claims, 20 C.F.R. §§ 404.1520c and 416.920c

13

provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ now need only articulate how persuasive she finds each medical source's opinion, based primarily on an opinion's supportability and consistency.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).

During Plaintiff's reconsideration disability determination, Dr. Eckert opined that Plaintiff could not perform tasks that involve in-depth, multi-layer decision making or supervisory tasks.  Dr. Eckert opined that he could: understand, recall, and perform simple and some detailed but not complex tasks, and make related judgments; focus for two hour periods with routine breaks and pace and persist for an 8 hour workday and 40 hour work week, despite psychological problems; interact with coworkers and supervisors to learn tasks and accept criticism but can only tolerate incidental and occasional public contact; and adapt to a work setting with some changes.  R. 160, 181.  The ALJ summarized Dr. Eckert's opinion and found it to be unpersuasive, concluding it was "unsupported and inconsistent" with the record.  R. 22-23.

Plaintiff argues the ALJ failed to explain how Dr. Eckert's opinion was "unsupported," because Dr. Eckert reached her opinion after reviewing the record evidence.  ECF No. 13 at 13.  Plaintiff, again, appears to be arguing that the ALJ's RFC needs to correspond directly to a medical opinion.

Despite Plaintiff's assertions, the ALJ adequately explained her reasons for not finding Dr. Eckert's mental opinion persuasive.  The ALJ explained that Dr. Eckert's opinion appeared to be only based on a January 2021 positive depression screening that resulted in no diagnosis or treatment, and an April 2021 consultative examination showing mild attention and concentration deficits on exam.  R. 23 (citing R. 633, 635, 659-663).  The ALJ explained that the record mental status examinations did not support any mental deficits or psychiatric issues.  *Id.* (citing R. 600,

14

609, 665, 668, 749, 765). The ALJ concluded her analysis by explaining that Plaintiff's "reports of activities, his course of treatment, and his objective examination findings do not support a finding that the claimant has a severe mental impairment" that affects his ability to perform work-related activities. *Id.* The Court finds no error in the evaluation of Dr. Eckert's mental opinion, because the ALJ's explanation for finding the opinion unpersuasive was legally proper and supported by substantial evidence. Plaintiff simply disagrees with the ALJ's interpretation of Dr. Eckert's opinion, and is essentially asking the Court to re-weigh the evidence, which is improper. *See Oldham*, 509 F.3d at 1257-58.

### E. The ALJ Committed Harmless Error by Failing to Account for Plaintiff's Non-Severe Mental Impairment in Assessing the Mental RFC

Plaintiff last argues the ALJ committed harmful error, because she failed to consider the effects of Plaintiff's non-severe mental impairment of adjustment disorder in formulating the RFC. ECF No. 13 at 12. As explained above, the ALJ must consider the combined effects of all the claimant's severe and non-severe impairments in formulating the RFC. *Wells*, 727 F.3d at 1065; *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of [a claimant's] medically determinable impairments of which we are aware, including . . . impairments that are not 'severe'. . . when we asses [a claimant's] residual functional capacity.").

The ALJ's step-two assessment of limitations in the four broad areas of mental functioning, known as the "paragraph B" criteria, is not an RFC assessment. SSR 96-8p, at *4. Rather, such limitations are used to rate the severity of the claimant's mental impairments at step two and three of the sequential evaluation. *Id.* The RFC assessment, however, "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph[] B." *Id.* Thus, a finding at step-two that an impairment is non-severe "does not permit the ALJ

simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells*, 727 F.3d at 1068-69.

### 1. ALJ's Step Two Findings

At step two, the ALJ determined that Plaintiff's adjustment disorder was a non-severe medically determinable impairment. R. 21. The ALJ then briefly summarized Plaintiff's hearing testimony and treatment record. *Id.* The ALJ noted Plaintiff's hearing testimony that he has depression issues and is prescribed medication for depression. *Id.* (citing R. 68, 73-74, 95, 102). The ALJ noted Plaintiff's depression screenings showed no mental health concerns and mental status exams showed no psychiatric deficits. *Id.* (citing R. 635, 665, 749, 765). The ALJ explained that Plaintiff's April 2021 consultative mental examination showed he was cooperative; oriented to time and location but not date; had normal mood, affect, thought processes, insight, and judgment; and denied suicidal and homicidal ideation, visual hallucinations, and delusions. *Id.* (citing R. 659-663). The ALJ concluded her step-two discussion of Plaintiff's adjustment disorder by noting that the record did not contain any documentation of mental health treatment since the alleged onset date. *Id.*

The ALJ determined that Plaintiff's non-severe adjustment disorder caused mild limitations in the paragraph B functional areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, but no limitations in the functional areas of interacting with others and adapting or managing oneself. R. 21-22.

### 2. ALJ's RFC Assessment Was Error

The ALJ did not mention or consider the effects of Plaintiff's adjustment disorder in her RFC analysis. R. 24-27. The ALJ's discussion, instead, was focused exclusively on Plaintiff's physical limitations. *Id.* The ALJ never discussed what, if any, work-related limitations result from Plaintiff's non-severe adjustment disorder. The omission of a discussion regarding the effects

16

of this non-severe impairment demonstrates that the ALJ failed to provide a narrative discussion explaining the evidentiary basis and rational for the RFC assessment, as required by SSR 96-8p. Thus, because the ALJ "did not engage in any analysis of mental functions and how they may be impacted (or not) by [Plaintiff's] medically determinable mental impairments," the ALJ did not follow the "step-four analytical procedure prescribed by the regulations." *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013). Without a discussion of how Plaintiff's non-severe adjustment disorder was accounted for in the ALJ's RFC assessment, or an explanation as to why this impairment did not impose any limitations, the Court is unable to "credit [the ALJ's] conclusion with substantial evidence." *Wells*, 727 F.3d at 1071.

### 3. ALJ's Error Was Harmless

The ALJ's failure to consider a claimant's non-severe impairments when assessing the RFC does not necessarily warrant remand if "the evidence in [the] case does not support assessing any functional limitations from mental impairments." *Alvey*, 536 F. App'x at 794; *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (explaining that a finding of harmless error is appropriate where the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"). In *Alvey*, the Tenth Circuit found the ALJ's failure to analyze the impact of a claimant's non-severe mental impairments on the RFC was harmless error, because there was no evidence the claimant had been treated by a mental practitioner and no substantial evidence supporting any functional limitations. 536 F. App'x at 794-95.

The Court finds that no reasonable factfinder could have imposed work-related mental limitations based on the record evidence. The record is devoid of any mental health treatment since Plaintiff's alleged onset date. R. 21. Dr. Eckert did find Plaintiff had severe mental impairments and opined that Plaintiff should have certain work-related mental limitations in his

17

RFC, but this opinion was based on one positive depression screening and Dr. Smith's consultative examination showing mild attention and concentration issues. R. 149, 160, 170, 181. The record contains many negative depression screenings (*compare* R. 635, *with* R. 665, 668, 749), and while Dr. Smith diagnosed Plaintiff with "adjustment disorder, mixed anxiety and depression," he only found that Plaintiff "*may* benefit from . . . mental health treatment *should* his depression and anxiety worsen or medical concerns become more complex" (R. 661 (emphasis added)).

Plaintiff testified at both hearings that he was prescribed mental health medication, specifically referencing Sertraline at the second hearing. R. 73, 95. However, the record does not contain any reference to a Sertraline prescription or any mental health medication; instead, the record shows that Plaintiff was prescribed medications relating to his heart issues, high cholesterol, and high blood pressure. *See, e.g.,* R. 653. Plaintiff has not pointed to any objective medical evidence supporting his testimony that he was prescribed mental health medication. After exhaustive review, the Court located none in the record. To the extent there are medical records not in the administrative record that show Plaintiff was prescribed mental health medication, the ALJ asked Plaintiff's counsel at both hearings if the record was complete, and counsel stated both times that it was. *See* R. 67-68 (Plaintiff's counsel stating record was complete at first hearing); R. 86 (Plaintiff's counsel stating record was complete at second hearing). Plaintiff cannot now claim otherwise. *See Maes*, 522 F.3d at 1097.

Unlike other recent decisions where the undersigned has found reversible error for an ALJ's failure to consider non-severe mental impairments in forming the RFC, there is *no* mental health treatment in the record to support work-related mental limitations. *Cf. Elizabeth A. M. v. O'Malley*, No. 23-CV-220-JFJ, 2024 WL 1929994, at *4-5 (N.D. Okla. May 2, 2024) (finding reversible error where ALJ failed to consider plaintiff's non-severe mental impairments in formulating RFC, where plaintiff participated in outpatient therapy and medication management for major depressive

18

disorder, PTSD, and panic disorder); *Aimee L. M. v. O'Malley*, No. 23-CV-98, 2024 WL 1333037, at *5-6 (N.D. Okla. Mar. 28, 2024) (finding reversible error where ALJ failed to consider plaintiff's non-severe mental impairments in formulating RFC, where plaintiff was prescribed mental health medication for depression and anxiety).

Under the circumstances of this case, the Court finds the ALJ's failure to consider Plaintiff's non-severe impairment of adjustment disorder in formulating the RFC harmless error. *See Alvey*, 536 F. App'x at 795-95 (finding harmless error where ALJ failed to consider plaintiff's non-severe mental impairments in formulating RFC, where there were "few mentions of mental issues" and "no records indicating treatment by a mental practitioner").

## V.  Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 18th day of September, 2024.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**